1 | Bridget B. Hirsch, SBN 257015
  | bridget@bbhirsch.com
2 | 7435 N. Figueroa St., No. 412422
  | Los Angeles, CA 90041
3 | (323) 387-3413

4 | Evan S. Cohen, SBN 119601
  | esc@manifesto.com
5 | 1180 South Beverly Drive. Suite 510
  | Los Angeles, CA 90035-1157
6 | (310) 556-9800

7 | Attorneys for Non-Parties
  | CLEOPATRA RECORDS and BRIAN PERERA

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| NORMAN BLAGMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>APPLE INC., AMAZON.COM, INC., GOOGLE INC., MICROSOFT CORPORATION, EMUSIC.COM INC., THE ORCHARD ENTERPRISES, INC., ORCHARD ENTERPRISES NY, INC., And John Does 1-10, persons and entities whose identities are unknown to Plaintiff but who have performed and participated in the unlawful acts alleged herein,<br><br>Defendants. | Case No.<br><br>**DISCOVERY MATTER**<br><br>**DECLARATION OF KENNETH TIGHE IN SUPPORT OF MOTION OF NON-PARTIES CLEOPATRA RECORDS, INC. AND BRIAN PERERA TO QUASH SUBPOENAS** |
|---|---|

1

DECLARATION OF KENNETH TIGHE

# DECLARATION OF KENNETH TIGHE

I, Kenneth Tighe, hereby declare as follows:

1.  I am a Project Manager at Cleopatra Records, Inc. ("Cleopatra"), which is not a party, but has been served with a subpoena for testimony and documents, in the above-entitled case currently pending in the United States District Court for the Southern District of New York, Civil Action No. 1:12-CV-5453 (ALC).

2.  I have personal knowledge of the facts stated herein and, if called as a witness, I could and would testify competently thereto.

3.  I have reviewed the subpoenas served upon Cleopatra and its president, Brian Perera (collectively, the "Subpoenas"). I submit this declaration in support of the motion to quash the Subpoenas.

4.  Cleopatra is an independent record label, located in Los Angeles, California.

5.  I have been a Project Manager at Cleopatra since in or about 2007. My duties at Cleopatra include overseeing the submission of digital content to The Orchard Enterprises NY, Inc. ("The Orchard"), which is the worldwide digital distributor and aggregator for Cleopatra.

6.  Cleopatra has the responsibility of obtaining mechanical licenses for the musical compositions embodied in the sound recordings that Cleopatra submits to The Orchard for distribution. However, The Orchard has agreed to obtain those mechanical licenses on Cleopatra's behalf, and does so, on a routine basis. It is my understanding that The Orchard has, for the past several years, delegated the task of researching and obtaining those mechanical licenses to a company called RightsFlow. It is also my understanding that RightsFlow has the responsibility of rendering royalty statements to music publishers, and, also, making royalty payments to those music publishers, based upon sales information that The Orchard provides to RightsFlow. Those mechanical royalty payments for sales of Cleopatra's

1 recordings are deducted from revenues that would otherwise be payable to Cleopatra, as it is the label's responsibility to pay mechanicals on digital downloads that we sell, and we do so.

7. I also oversee the process by which Cleopatra uploads digital content to The Orchard. As part of that process, Cleopatra informs The Orchard whether Cleopatra controls the publishing on a particular song (and, therefore, there would be no need for The Orchard to have RightsFlow obtain a mechanical license), or if Cleopatra does not control the publishing (and, therefore, The Orchard is directed to obtain a mechanical license for each such song).

8. In thousands and thousands of instances, over the years, The Orchard has agreed to obtain mechanical licenses for Cleopatra, and, to my knowledge, they have done so, or RightsFlow has done so on behalf of The Orchard. Cleopatra relies on The Orchard to obtain all necessary mechanical licenses, pursuant to The Orchard's contractual obligation to do so.

9. I have no knowledge of any disputes regarding the mechanical licenses that The Orchard has obtained, with regard to the digital tracks we have submitted for distribution. I have no knowledge of any publishers that have rejected any royalty payments or statements rendered by RightsFlow with regard to sales of our digital recordings.

10. In extremely rare instances, a publisher has let us know that the common arrangement of a consensual licensing (and payments on those licenses) was not acceptable. In those instances, it was necessary to obtain a mechanical license based upon §115 of the Copyright Act, which allows labels to obtain licenses even if publishers do not agree to issue them. One such example involved a re-recording of the hit song "Gangnam Style," in which one of the publishers did not want us to release that re-recording, and we served the necessary notice under §115.

11. We also have had to obtain compulsory licenses for some re-recordings of musical compositions associated with the musical group AC/DC, which is known for its resistance to cover versions of its songs.

12. Over approximately six years, and many thousands of mechanical licenses, there have only been two or three instances in which it was necessary to obtain a mechanical license based upon §115 of the Copyright Act. This is a very small percentage.

13. With regard to the exploitation of digital tracks in major digital stores such as iTunes, Amazon, and eMusic, it is my experience that instances in which an actual compulsory license is obtained from a music publisher under the strict requirements of §115 of the Copyright Act are very rare. The day-to-day business of selling permanent digital downloads typically involves consensual licenses in which music publishers routinely agree to accept payments of mechanical royalties. In my experience, the procedures of §115 are reserved for those instances in which a label has knowledge that a particular music publisher does <u>not</u> want a song utilized in a particular recording.

14. The Subpoenas list four thousand two hundred and forty nine (4,249) albums released by Cleopatra. Several hundred of the titles on that list were released in Europe only. Mechanical licensing is handled differently in Europe, and mechanical licenses are obtained through local rights societies. With regard to the remaining tens of thousands of songs that were released in the United States, I do not know of any on that list that required a compulsory license; to my knowledge, The Orchard, through RightsFlow, has obtained consensual licenses with music publishers, there is no controversy regarding any of them, and royalties have been paid and accepted by those music publishers.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

EXECUTED this 18th day of October 2013, at Los Angeles, California.

_____
KENNETH TIGHE