UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
NORMAN BLAGMAN, individually and on behalf of all others similarly situated,

         Plaintiff,    Docket No. 12 CIV 5453 (JGK)

  -against-        **DECLARATION OF**
              **MATTHEW F. SCHWARTZ**

APPLE INC., AMAZON.COM, INC., GOOGLE INC., MICROSOFT CORPORATION, EMUSIC.COM INC., THE ORCHARD ENTERPRISES, INC., ORCHARD ENTERPRISES NY, INC., and John Does 1-10, persons and entities whose identities are unknown to Plaintiff but who have performed and participated in the unlawful acts alleged herein,

         Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

  MATTHEW F. SCHWARTZ, declares that the following statements are true:

  1. I am an attorney duly admitted to practice law in New York. I am one of the attorneys for Plaintiff Norman Blagman and the proposed class. I respectfully submit this declaration in support of the Amended Subpoenas seeking production of documents and depositions of Cleopatra Records, Inc. ("Cleopatra") and its President, Brian Perera and in opposition to their motion to quash of modify the Amended Subpoenas.

### Procedural Background

  2. This proceeding is brought in connection with a copyright infringement lawsuit and proposed class action arising out of the Defendants' infringements of numerous copyrighted musical compositions owned by Plaintiff Norman Blagman and other composers and music publishers. Blagman is a songwriter who has been writing, producing and recording music for over fifty years. Blagman Decl., ¶ 3. He has written songs that were recorded by Elvis Presley, used in Mel Brooks' film The Producers, and even for Mad Magazine. Blagman Decl., ¶ 3. He

continues to write and produce music to this day. Blagman Decl., ¶ 3. Blagman is the owner of the U.S. copyrights in the musical compositions, *Jazz Is His Old Lady and My Old Man* and *The Prowl*. Blagman Decl., ¶ 2.

3. On July 13, 2012, Plaintiff filed the action in the Southern District of New York in his own right and on behalf of other composers and publishers similarly situated against Apple Inc. ("Apple"), Amazon.Com, Inc. ("Amazon"), Google Inc. ("Google"), Microsoft Corporation ("Micosoft"), Emusic.Com Inc. ("EMusic"), The Orchard Enterprises, Inc., and Orchard Enterprises NY, Inc. (collectively, "Orchard"). Cohen Decl., Exh. C.

4. On October 26, 2012, the Defendants jointly moved to dismiss the Amended Complaint and to strike the class allegations.  SDNY Docket Entries 27-30. In their motion to dismiss, Defendants argued that the class lacked standing to pursue the claims because of the possible existence of licenses and that Plaintiff had failed to plead the absence of mechanical licenses adequately.

5. By Order and Opinion docketed May 20, 2013, the Hon. Andrew L. Carter denied both motions. A copy of the Order and Opinion is annexed as Exhibit I. In doing so, Judge Carter considered and expressly rejected Defendants' arguments alleging lack of Article III standing. Exhibit I, p. 10. The court also denied the motion to strike the class allegations and rejected Defendants' arguments relating to possible existence of licenses. Exhibit I, pp. 8-11.

6. The Defendants have since moved for reconsideration of the denial of their motions and the motion remains pending. SDNY Docket Entries 57-58. Judge Carter's rules do not permit the prevailing party to submit opposition on a motion for reconsideration unless ordered otherwise and he has not done so in this case.

7.  Fact discovery is proceeding and the deadline for class certification discovery is April 15, 2013. Cleopatra Motion, Exh. 1. The parties have agreed on a protective order, which may be applied to materials produced by non-parties, and have agreed on a discovery plan (Cohen Decl., Exh. M). A copy of the Protective Order is annexed as Exhibit J.

8.  On July 9, 2013, the parties appeared for a discovery conference before Magistrate Judge Francis, to whom the case had been assigned for discovery related matters. A copy of the transcript from this conference is annexed as Exhibit K.

9.  The parties have exchanged documents and plaintiff has served several non-party subpoenas on other record labels but no depositions have been taken. On October 31, 2013, the Defendants filed an objection concerning the scope and amount of non-party discovery, requesting that, "some limits on third-party discovery… be imposed." A copy of the objection is annexed as Exhibit L. The court has yet to rule on the objection and Defendants have never objected specifically to the Cleopatra or Perera subpoenas

10. In the course of discovery, Defendant Orchard produced its contract with Cleopatra for the sale and distribution of musical works provided to Orchard by Cleopatra. The Orchard-Cleopatra contract is annexed as Exhibit M. This document has been designated confidential by Orchard and the parties have agreed that it may be submitted under seal. Orchard also produced amendments to this contract but the licensing provision (Section 7) has never been amended.

### The Amended Subpoenas

11. In August, Plaintiff served Cleopatra and Perera with two identical subpoenas, each setting forth a one-page list of deposition topics and 10 document requests. Cohen Decl., Exh. A. In late August, I conferred with counsel for Cleopatra and Perera and advised him of

Plaintiff's contention that Cleopatra had pirated thousands of recordings and had therefore infringed the embedded compositions. Cleopatra's counsel objected to the subpoenas and argued that that they did not adequately explain the basis for Plaintiff's claim that Cleopatra was a music pirate and that the subpoenas did not adequately identify the pirated recordings.

12. To address these objections, Plaintiff served Amended Subpoenas providing a detailed explanation for Plaintiff's contention that Cleopatra is a music pirate and providing a list (the Cleopatra Album Chart annexed as Exhibit D to the amended subpoenas) specifically identifying 4,249 pirated albums embodying over 100,000 pre-1972 recordings. Cohen Decl., Exh. F. Plaintiff also agreed to limit the scope of the document requests so that, for example, Cleopatra and Perera would appear for a joint deposition session and they would only be required to produce a sampling of recording license agreements with 10 labels and one years' worth of royalty statements to these labels. Cohen Decl., Exh. G.

13. Cleopatra has never responded specifically to this reduced request for documents. Cleopatra's attorney has never offered me any explanation on the scope or quantity of documents that might be responsive to the subpoenas or what the cost would be for Cleopatra to comply with the subpoena. Instead, Cleopatra and Perera, however, refuse to provide any documents or to appear for deposition and have now moved to quash the Amended Subpoenas. Counsel and I agreed on a December 9th return date for this motion to quash and we also agreed to defer compliance with the subpoenas until a date to be agreed upon in January, pending the outcome of this motion.

14. Cleopatra's counsel has fairly described the positions taken by the parties in our meet and confer sessions, except that I disagree with some of the statements in his declaration,

one in particular which must be addressed here because I feel he has mischaracterized what I said to support the argument that the subpoenas are burdensome.

     15.    Cleopatra's counsel insisted that we identify the tracks that we believed were being pirated. Once we did so, counsel and I discussed, in general terms, how the depositions would proceed, but it certainly is not our intention to depose Cleopatra or Mr. Perera on a song-by-song for over 100,000 tracks included on the Cleopatra Album List. While we may ask some questions about specific songs and albums, our intention is to ask general questions in the deposition to confirm Plaintiff's contention that Cleopatra does not have licenses or authorizations from other record labels to sell their recordings. For example, we estimate that there are over 500 albums on the Cleopatra Album Chart for which the recordings are owned by the major record labels. We can explore the licensing issues with respect to these albums on a label-by-label basis. We do not believe Cleopatra has any licenses for the in these recordings (or in the compositions) the burden of responding should be minimal.

     16.    There are other mischaracterizations in counsel's description of our meet and confer sessions but they are not really germane to the motion to quash so I will not burden the Court with a full refutation. There are, however, two important omissions from counsel's descriptions. First, in one of our telephone conversations, I asked counsel for Cleopatra if his clients owned the master recordings for the albums listed on the Cleopatra Album Chart and he stated that they did not.

     17.    Second, with respect to foreign sales, Cleopatra is offering the tracks on Albums 3860-4249 on the Cleopatra Album Chart exclusively for sale in the Defendants' overseas online music stores. In our September 24, 2013 call, counsel stated that Cleopatra is not required to obtain any license or authorization in the U.S. to sell recordings that are in the public domain

overseas in foreign online music stores. This is not the case. If the recording is subject to copyright protection here in the US, authorization of the copyright owner is required for export under 17 U.S.C. § 602 and a license to make and distribute copies of the musical works embedded in the sound recordings (prior to export) is required under 17 U.S.C. § 115.

### Cleopatra's Infringment of *I Have a Dream*

18. Cleopatra also offers other pirated material for sale in the online music stores, such as radio broadcasts, dramatic readings, comedy, and speeches. For example, Cleopatra is selling many recorded speeches of Dr. Martin Luther King, including his historic speech, *I Have A Dream.* Copies of catalog entries from some of the Defendants' online music stores are annexed as Exhibit N. We have received confirmation, by e-mail, from the King Estate that Cleopatra has no authorization to sell this recording. A copy of the confirming e-mail from the King Estate is annexed as Exhibit O. While the speeches, radio shows, etc. are not the subject of this lawsuit, they are evidence of Cleopatra's pirate operation.

I hereby declare under penalty of perjury that the foregoing statements are true.

_____
Matthew F. Schwartz

Executed this 8th day of November, 2013.