UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| NORMAN BLAGMAN, individually and on behalf of all others similarly situated, | : : : | |
| Plaintiff, | : : | Docket No. 12 CIV 5453 (JGK) |
| -against- | : : : | **DECLARATION OF** <br> **BRIAN LEVENSON** |
| APPLE INC., AMAZON.COM, INC., GOOGLE INC., MICROSOFT CORPORATION, EMUSIC.COM INC., THE ORCHARD ENTERPRISES, INC., ORCHARD ENTERPRISES NY, INC., and John Does 1-10, persons and entities whose identities are unknown to Plaintiff but who have performed and participated in the unlawful acts alleged herein, | : : : : : : : : | |
| Defendants. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

BRIAN LEVENSON, declares that the following statements are true:

1. I am an attorney duly admitted to practice law in New York. I am one of the attorneys for Plaintiff Norman Blagman and the proposed class. I respectfully submit this declaration in support of the Amended Subpoenas seeking production of documents and depositions of Cleopatra Records, Inc. ("Cleopatra") and its President, Brian Perera and in opposition to their motion to quash of modify the Amended Subpoenas.

2. As discussed more fully below, I have conducted an extensive investigation of Cleopatra's online music catalog, including all albums uploaded by Cleopatra under its imprint names, Master Classics, Vintage Masters Inc., Stardust Records, Screenland Records, Rockabilly Records, Goldenlane, Soundtrack Classics, Holiday Classics, Essential World Masters, American Made Recordings, and Platinum Classics (collectively, "Cleopatra") in multiple online music stores. My investigation identified the 4,249 albums listed in the Cleopatra Album Chart annexed as Exhibit D to the Amended Subpoenas embodying over 100,000 pre-1972 recordings that are

being sold by Cleopatra in online music stores, including those operated by the Defendants. Virtually all of the recordings embodied on the 4,249 albums were recorded prior to 1972.

### eBay and Digital Sales of Identical Albums

3. As part of my investigation, I researched Cleopatra's eBay store, where Cleopatra sells vinyl records that were originally released prior to 1972. I compared the vintage vinyl records that Cleopatra is currently selling in its eBay store with the digital albums that Cleopatra has for sale in the online music stores. I have identified at least 20 instances where, at the same time Cleopatra was selling the original pre-1972 vinyl record in its eBay record store it was also selling a complete copy of the album in digital form in the Defendants' online music stores and crediting itself as the copyright owner

4. I annex as Exhibit C copies of the eBay catalog entries for these 20 albums which depict photographs of the original albums as issued prior to 1972. I annex as Exhibit D copies of many of the EMusic, Amazon, and iTunes online music store catalog entries showing that Cleopatra has simply digitally copied the tracks from the entire album and is now selling them in the Defendants' online stores. In virtually every case, Cleopatra has copied the artwork on vinyl album for use as the cover of the digital album, except that it has altered the original cover art to remove the original record label logo, as shown in these examples of side-by-side comparisons:

**The actual Easy Riders album on eBay:**     **Cleopatra's pirated album on Amazon:**

  

**The actual Buddy Rich album on eBay:**  **Cleopatra's pirated album on Amazon:**

 

**The actual Donnybrook cast album on eBay:**  **Cleopatra's pirated album on Amazon:**

 

### Digital Copies of Complete Albums

5. To date, I have identified that over 1,000 of the 4,249 albums sold by Cleopatra in online music stores and identified on the Cleopatra Album Chart are wholesale reproductions of entire albums that were originally fixed and released by other record labels prior to 1972 (the balance are compilations of similar material as discussed below). Virtually all of the albums listed in the Cleopatra Album Chart have been posted online for sale by Cleopatra in 2009 or later. In nearly every case, the album cover artwork was doctored to remove the original record label name from the cover. For example, as discussed in the Declaration of Donald Kasen,

3

Cleopatra has altered the artwork and copied at least 14 entire Inspired albums and the Defendants are selling full digital copies in their online music stores without license or authorization.

6. The majority of the 1,000 albums were originally issued by record labels that are now owned by the major labels (Sony, Warner, and Universal). In a number of instances, Cleopatra is selling the same album, side-by-side, in the same online music stores as the major label that owns it. For examples, see the catalog entries annexed as Exhibit E showing instances where Cleopatra (through its imprints Stardust and Master Classics) is selling a digital album with identical artwork and content to one offered by a major record label (such as Geffen and Verve). In each example, the Cleopatra pirated version is priced less than the major label album.

7. The albums listed in the Cleopatra Album Chart that are not wholesale reproductions of previously released albums are themed aggregations of pre-1972 recordings that were originally released by other record labels. These themed compilation albums are comprised of individual recordings from the albums Cleopatra wholly reproduced and other pre-1972 recordings that were issued by other record labels as "45 singles" (a record with only one song on each side). All of these 45 singles were originally released by other record labels, including those that are now owned by Majors.

8. I contacted all three major record labels and confirmed that Cleopatra has no license to sell their recordings. In-house counsel for Warner Music Group stated that: (a) Warner has no relationship with Cleopatra and, to her knowledge, never has; (b) Warner never licensed full album digital rights to Cleopatra; and (c) Warner never licensed individual recordings to Cleopatra for download rights.  Annexed as Exhibit F, are copies of actual albums we believe to be owned by Warner (obtained from the Discogs website) followed by a catalog entry from at least one of the Defendants' online stores showing that Cleopatra has copied, altered, and offered

the Warner for sale in the Defendants' online music stores. Annexed as Exhibit G are copies of search results on the Amazon MP3 store showing an additional five instances in which Cleopatra and Warner are selling the same album, side by side, in Defendant Amazon's music store. Annexed as Exhibit H are copies of search results showing an additional five instances in which Cleopatra is selling Warner's albums in the Amazon UK store while Warner is selling it in the U.S. In each instance, Cleopatra's album is lower priced.

9. In-house counsel for Sony Music Entertainment stated affirmatively that Sony does not license to Cleopatra and that in the past Sony had notified Cleopatra of infringement and Cleopatra removed the infringing recordings from online music stores.

10. Universal Music Group stated affirmatively that there was no record of Universal doing any business with Cleopatra going back to 2008. Based on my investigation, I believe Cleopatra is selling hundreds of albums owned by Universal, in some instances directly in competition with Universal. I annex as Exhibit E copies of catalog entries from online music stores showing three instances in which Cleopatra is selling the same digital album as Universal (although with slightly altered artwork). In each instance, Cleopatra's version is lower priced.

### Cleopatra Selling Albums at a Loss

11. My investigation also revealed that Cleopatra is selling many compilation albums in the Defendants' online music stores that are comprised of large numbers, 80 to 100 recordings and that are priced below the break-even point. In these cases, Cleopatra offers a large number of recordings for sale at a price that would be insufficient to pay mechanical royalties to the owners of the copyrights in the compositions.

12. For example, before it was taken down from the online music stores when the New York lawsuit was filed, Cleopatra was offering *The Prowl* for sale as part of the album Popcorn - '60s Cool Kids which had 100 recordings. Cleopatra offered the album for sale on

Google Play for $9.49 and on EMusic for $4.40. Copies of the relevant online music store catalog entries for *The Prowl* are annexed as Exhibit P. On a sale of a full album, Cleopatra would be obligated to pay $9.10 ($.091 per track) in mechanical royalties to the owners of the composition copyrights. After paying the online music store and Orchard their shares of the sale proceeds (a total of between 45-50% of the sale proceeds), however, there would not be enough money to pay the mechanical royalties.

13. Annexed as Exhibit Q are copies of the catalog entries we obtained from the EMusic online music store showing 20 Cleopatra albums (embodying over 1,500 songs) for sale in the Defendant EMusic's online music store. These albums are all priced below the break-even point, *i.e.,* any sale of the full album will not generate enough income to pay the commissions due to EMusic and Orchard plus the statutory mechanical royalties ($.091) to all of the copyright owners of the songs on the album for each sale of the album. Cleopatra would lose money each time the album is sold. For example, the Cleopatra albums, '50s Rockabilly Pioneers Vol. 1-3 (each with 90 recordings for $6.76), 50s and '60s Lost & Found Records Vol. 1-4 (up to 80 recordings for $6.76), and 100 Organ Classics (100 recordings for $6.76) all do not break even. Even if EMusic and Orchard did not take part of the sale proceeds for these albums, there would not be enough money to pay statutory royalties.

14. Annexed as R are true copies of the catalog entries we obtained from the Google online music store showing 20 Cleopatra albums (embodying over 1,500 songs) for sale in Google Play, Defendant Google's online music store. These albums are also priced below the break-even point when accounting for Orchard's distribution fee pursuant to its contract with Cleopatra. The sale of the album does not produce enough money to pay each of the copyright owners of the musical compositions on the album.

15. The foregoing are only examples and are not meant to be an exhaustive inventory of all instances where Cleopatra is selling albums at a below break-even price. Cleopatra is also engaging in this practice selling these same albums at below break-even prices on iTunes and Amazon. We believe this also occurs in Microsoft's online stores, but we have not had a chance to verify this.

I hereby declare under penalty of perjury that the foregoing statements are true.

Brian Levenson

Executed this 8th day of November, 2013